IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY L. CORNER | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 06 C 1397 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| DEPARTMENT OF LABOR | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary L. Corner lost a postal workers union election in April 2005. She unsuccessfully protested the election results before her local union, her national union, and the Department of Labor. She seeks review of the Department of Labor's rejection of her challenge to the union election. The Department moves to dismiss pursuant to Fed R. Civ. P. 12(b)(6).

### BACKGROUND

The facts are drawn from Corner's complaint and its attachments. On April 27, 2005, Corner ran for president of the Elmhurst, Illinois chapter of the American Postal Workers Union. After votes were cast, Honest Ballot, a private company that oversees elections, counted the ballots by hand. Corner had two election observers oversee the counting process. Honest Ballot personnel arranged the counted ballots into bundles, noting the vote totals on the bundles themselves. Corner's observers tallied the election results using the numbers located on each bundle. The first time the ballots were counted, another candidate for president won the election. The second time the ballots were counted, Honest Ballot found no change in the results. However, the count by Corner's observers indicated Corner won the presidency.

Corner unsuccessfully protested the inaccurate ballot count and other election irregularities before her local and national union. On November 15, 2005, Corner wrote a letter to the Department of Labor requesting review of the April 2005 election due to irregularities. Corner alleged: (1) the election results were inaccurate, as demonstrated by the discrepancy in results between the two counts; (2) the ballots may have been tampered with because they were not placed in a sealed container; (3) Honest Ballot was not qualified to conduct the election; (4) she was prevented from signing the ballot tally certification or checking the election totals on the tally sheets; (5) the eligible voters address list was inaccurate, preventing some members from voting; (6) she was denied an adequate number of election observers; and (7) there was a conspiracy to rig the election results. On February 24, 2006, the Department informed Corner by letter that its investigation of her charges did not provide a basis for setting aside the election. The letter stated that a statement of reasons for its decision was forthcoming.

On March 14, 2006, Corner filed a complaint in this court. The Department sent Corner its statement of reasons on May 18, 2006. The motion to dismiss was filed on June 9, 2006. Corner timely responded.[1]

---

[1] Corner was required to respond to the motion to dismiss by June 26, 2006. On June 13, she filed "Plaintiff's Motion To Have Defendants Dismissal Motion Denied," which was construed as her response to the motion. She filed a "Supplemental Response To Defendants Motion To Dismiss" on June 26, 2006. Because both documents were timely and the court must construe *pro se* pleadings liberally, the two documents are collectively considered her response to the motion to dismiss. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006).

## ANALYSIS

### I. Legal Standard

Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) is designed to ensure free and democratic union elections. *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470-71 (1968); *see also*, 29 U.S.C. §§ 401-531. It sets forth the substantive rules governing union elections, 29 U.S.C. § 481, and the mechanism for enforcing those rules, 29 U.S.C. § 482. A union member who alleges improper union election procedure must first exhaust local and national union remedies. 29 U.S.C. § 482(a). Then, unsuccessful union members may file a complaint with the Department of Labor. *Id.* If, after investigating the complaint, the Department has probable cause to believe that a violation of the LMRDA occurred that affected the election outcome, the Department files suit in district court to set aside the election. 29 U.S.C. § 482(b); *Wirtz*, 389 U.S. at 472. If the Department decides not to file suit, it must provide the complaining union member a statement of reasons supporting its decision. *Dunlop v. Bachowski*, 421 U.S. 560, 572 (1975), *overruled on other grounds, Local No. 82, Furniture and Piano Moving, Furniture Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 549 n.22 (1984).

The Department's decision not to file suit is subject to limited judicial review under the Administrative Review Act. 5 U.S.C. § 706(2)(a) (courts shall set aside agency determinations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Dunlop*, 421 U.S. at 566. Absent exceptional circumstances, the court is confined to reviewing the Department's statement of reasons not to sue. *Id.* at 572. The statement must be adequate to inform the court of the grounds for the decision and the facts upon which the decision is based.

*Id.* at 573-74. So long as the statement of reasons contains a rational and defensible basis of the Department's determination, the Department's decision will be upheld. *Id.* at 573. In that case, the union member's complaint should be dismissed. *Dunlop*, 421 U.S. at 574; *see also Grigsby v. Chao*, No. 3:05CV7054, 2005 WL 1593701, at *1 (N.D. Ohio July 6, 2005) (granting Department's motion to dismiss union member's complaint).

The *Dunlop* court identified some circumstances justifying an inquiry beyond the statement of reasons: Department of Labor refusal to enforce the LMRDA; complete abrogation of its enforcement duties; and prosecution of complaints in a constitutionally discriminatory manner. *Dunlop*, 421 U.S. at 574. Corner does not contend this is an exceptional case or allege impropriety of that magnitude. Accordingly, this court is confined to a review of the statement of reasons.

## II. Motion To Dismiss

The Department raises three arguments in support of dismissal. First, it argues dismissal is warranted because the complaint was filed without the Department's statement of reasons. According to the Department, the court cannot conduct proper judicial review pursuant to *Dunlop*. However, the government cured this insufficiency in Corner's complaint by filing the Department's statement of reasons with its motion to dismiss. While the court generally may only consider Corner's complaint in evaluating the motion to dismiss, documents attached to the motion may be considered if they are central to Corner's claim. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). There is no doubt that the statement of reasons is central to Corner's claim because the court's review of the Department's decision is limited to an examination of the statement. The court can properly consider the statement of reasons in ruling

4

on the Department's motion to dismiss. Indeed, it would be impossible to adjudicate the motion to dismiss without the statement of reasons. *Id.* (court was required to consider employment agreement to render decision on motion to dismiss). In contrast to the statement of reasons attached to the motion to dismiss, Corner attaches several documents to her response that are not central to her claim or attached to her complaint. The court may not consider these documents in ruling on the motion. *Id.*

The Department argues the complaint should be dismissed because it seeks relief that the court may not grant. In her complaint, Corner requests the court to determine whether there should be a new union election and whether she should be installed as union president. These matters are beyond the scope of this court's limited review. *Dunlop*, 421 U.S. at 574 (courts may only review the Department's statement of reasons). However, the complaint also requests the court to "review and overturn the decision of the Department of Labor." Compl. at 4. This prayer for relief is adequate to invoke review of the Department's decision pursuant to *Dunlop*. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (district courts are required to liberally construe *pro se* complaints).

Finally, the Department argues the complaint should be dismissed because the statement of reasons is not arbitrary or capricious. Corner identified seven election irregularities in her letter to the Department. In its statement of reasons not to set aside the election, the Department considered all seven arguments. As described in greater detail below, the Department had a rational and defensible basis for its decision regarding all Corner's allegations. Therefore, Corner's complaint must be dismissed.

5

Corner alleged that the election results were inaccurate, citing a discrepancy between the first and second vote counts. In response, the Department interviewed union members, union officers, union election officials, and non-member election officials. The Department also conducted a recount of the election ballots. The recount confirmed the results reached by Honest Ballot, with a maximum discrepancy of two votes for any candidate. Corner argues the Department's position is irrational because her observers reached a different result than Honest Ballot during the second count. However, the statement of reasons indicates that the observers' tally sheets were inconsistent with the numbers Honest Ballot recorded on the ballot bundles. Any discrepancy between the results reached by Corner's observers and Honest Ballot is explained by the error on the observers' tally sheets. Corner also argues the decision is irrational because the Department only interviewed one member of the local election committee in the course of its investigation. However, Corner does not reveal why interviewing other members of the election committee was important, or why the failure to do so renders the Department's decision regarding election results irrational. The thorough factual investigation of Corner's inaccuracy claim, reasonable explanation for the observers' results, and the full ballot recount by the Department constitute a sufficient rational and defensible basis for the Department's decision.

The Department found no indication of ballot tampering. The ballots were secured by Honest Ballot after the two counts on election night when Corner's observers were present, and then remained in Honest Ballot's possession until the Department recounted them and reached the same result. The Department's full examination of all election records and witness interviews revealed no indication of any tampering. Corner reasserts her argument that the

6

ballots were not placed in a sealed container, but does not contend the Department's decision was otherwise arbitrary and capricious. The Department's examination of the election records and witness interviews provide a rational and defensible basis for its decision not to set aside the April 2005 election for ballot tampering.

The Department found that Honest Ballot is a non-profit organization formed in 1909 to plan, supervise, verify, certify and insure the integrity of elections for entities including unions. Corner argues that Honest Ballot was not qualified to conduct the election, citing Honest Ballot's statement that it "supervised" the election instead of "conducting" it. Corner fails to relate why this semantic distinction renders the Department's decision arbitrary and capricious, and the record does not provide a basis to conclude the challenged terminology is material or relevant.

Corner complained in her letter to the Department that she and her election observers were not allowed to sign the ballot tally certification or check the election totals on the tally sheets. The Department found that neither the LMRDA nor the union's constitution permitted either of these actions. Therefore, even if the allegations were true, there was no violation of the LMRDA. Corner argues that the Department's decision was unreasonable because a book allegedly issued by the Department indicates that election observers can sign the ballot tally certifications. The book, which Corner does not argue is part of the LMRDA or her union's constitution, is not sufficient to establish that the Department's decision was irrational.

The Department found that Corner's three remaining claims were procedurally defaulted because she failed to exhaust her union remedies, as required by the LMRDA, 29 U.S.C. § 482. The Department cited the Postal Workers Constitution, Article 12, Section 8, for the union's exhaustion requirements. An election grievance must be brought before the local election

committee within 72 hours after the grievance arises. Then, the grievance may be appealed to the national election appeals committee in writing. Corner alleged in her letter to the Department that the voting eligibility list was inaccurate, leading to a large number of undelivered ballots to union members. The Department found that Corner raised the inaccuracy of the voting eligibility list in her April 30, 2005 protest to her local election committee. However, she learned of the inaccuracy either when a large number of her campaign mailing envelopes were returned to sender on April 18 or 19, or when she stated to the Department that she was told the list was inaccurate on April 20, 25 or 26. All of these dates were more than 72 hours before she filed her grievance with the local election committee.

Corner argues that the Department's facts regarding the voting list claim are incorrect. However, she admits that she first suspected the mailing list was inaccurate when some of her campaign envelopes were returned to sender. She does not contest that the undelivered mail was returned to her on April 18 or 19. However, she argues that she was not informed the list was inaccurate more than 72 hours before she brought her complaint. Essentially, she reasserts much of her argument from her letter to the Department, and advances new facts that were not before the Department. Even if this court were persuaded by Corner's version of the facts, the decision of the Department cannot be overturned. The statement of reasons reflects that the Department considered the facts Corner provided in her letter, those it uncovered during its investigation, and statements she made to the Department. The Department concluded she was aware the voting list was inaccurate more than 72 hours before she filed her union grievance. These facts form a sufficient rational and defensible basis for the Department's decision regarding the voting list. Corner's assertion that the Department's factual findings are incorrect does not undermine its

8

decision. This court cannot "substitute its judgment for the decision . . . not to bring suit" by reevaluating the facts in this case. *Dunlop*, 421 U.S. at 571.

Corner also complained to the Department that she was refused an adequate number of election observers and that there was a conspiracy to rig the election. However, the Department found she never presented these issues to her local or national union, and these claims were therefore procedurally defaulted. Corner reasserts her argument she was denied an adequate number of observers, but does not deny that she never presented this argument to her union. She offers no argument regarding the conspiracy allegations. The LMRDA requires union members to exhaust internal remedies before complaining to the Department. 29 U.S.C. § 481(a). Corner's failure to do so constitutes a rational and defensible basis for the Department's decision not to set aside the election.

A liberal reading of Corner's pleadings reveals that she asserts several arguments for the first time in her complaint and in her response to the motion to dismiss. She argues: the counting procedure used by Honest Ballot was improper; that Honest Ballot was required to certify the election the day it was conducted; the use of pencils to mark the ballot bundles indicate the ballots could have been altered; that union officials were never informed Honest Ballot planned to use temporary employees; and that Honest Ballot used too many ballot callers. These arguments are attacks on the validity of the election not presented to the Department, and the court cannot evaluate them. 29 U.S.C. § 483; *Local No. 82*, 467 U.S. at 544 (Department has exclusive responsibility for suits challenging the validity of union elections). Courts may only evaluate the Department's decision not to sue on the facts before the Department.

## III. Timeliness Of The Motion To Dismiss

Corner argues that the government's motion to dismiss was untimely. The record reveals that the United States Attorney was served on March 26, 2006, when Corner placed the summons and complaint in the mail. Fed. R. Civ. P. 5(b)(2)(B) (service by mail is complete on mailing); Summons, Dkt. No. 10 (Apr. 17, 2006). The certified mail receipt was stamped on *Sunday*, March 26, 2006. The United States Attorney has 60 days to answer or otherwise plead pursuant to Fed. R. Civ. P. 12(a)(3)(A), and an additional three days because service was accomplished by mail pursuant to Fed. R. Civ. P. 6(e). The Department of Labor was therefore required to answer or otherwise plead by May 29, 2006. The Department failed to file its motion to dismiss until June 9, 2006.

Despite the government's untimely motion, the circumstances of this case warrant the court to exercise its discretion in construing the motion as timely. The motion was filed only eleven days late. Corner requests no relief due to untimeliness. She does not allege prejudice, and the court cannot identify any injury to her. In resolving this dispute, the court need only consider the Department's statement of reasons and the parties' arguments regarding the statement. Those elements are before the court. Refusing to rule on the motion would cause needless delay and expense for the parties, contravening the overall preference for timely resolution of matters on the merits. Fed. R. Civ. P. 1; *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1131 (6th Cir. 1990) (reversing district court's conclusion that motion was untimely where there was no prejudice and there was an adequate factual basis to rule on the motion).

## CONCLUSION

The motion to dismiss the complaint must be granted. The Department of Labor's statement of reasons provides a reasonable and defensible basis for its conclusion that there was no actionable violation of the LMRDA.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

July 5, 2006